# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD W. DURHAM,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     **CIVIL ACTION NO. 18-CV-2113** |
| THE PHILADELPHIA PRISON<br>SYSTEM, *et al.*,<br>    Defendants. | : |

## MEMORANDUM

**MCHUGH, J.**                                                                                         **NOVEMBER 26, 2018**

Currently before the Court is Plaintiff Edward W. Durham's Amended Complaint, which raises claims pursuant to 42 U.S.C. § 1983, against the City of Philadelphia, Corizon Medical Associates, and the "Phila. Dept. of Prisons," based on the conditions at the Curran-Fromhold Correctional Facility, where Durham is currently incarcerated. (ECF No. 15.) Although he paid the fees to commence this civil action, Durham also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 14.) For the following reasons, the Court will dismiss the Amended Complaint for failure to state a claim against the named Defendants, pursuant to 28 U.S.C. § 1915A, and give Durham an opportunity to file a second amended complaint.

## I. FACTS AND PROCEDURAL HISTORY

Durham's initial Complaint, which named the City, Corizon, and the Philadelphia Prison System as Defendants, raised claims for deliberate indifference to Durham's serious medical needs. Durham alleged that during his incarceration at the Curran-Fromhold Correctional Facility, he fell from a top bunk bed while descending. At the time of the incident, which appears to have taken place in February of 2017, Durham was taking antibiotics for a balance deficiency and an ear and nose infection. He received an x-ray on his leg and was taken to the

1

hospital a few weeks later because he was still in pain. On March 6, 2017, he was given a cane for stability. However, he was deemed ineligible for a bottom bunk bed even though his back pain "continued to deteriorate." (Compl. ECF No. 2 at 5.)[1]

Durham noted that he was initially misdiagnosed with sprains in his back, neck, and leg, when the cause of his pain was instead a pinched spinal sack and a pinched nerve. He had two vertebrae removed and replaced with titanium parts, and now has screws in his neck. Durham is currently being treated with cortisone shots. He may require further surgery.

In his initial Complaint, Durham alleged that, between February and November of 2017, he "forewarned the jail & Corizon Med. assoc. of possible long term and or permanent injuries resulting from [his] fall." (*Id.* at 5-6.) The remaining allegations in Durham's Complaint pertained to his filing of grievances. He alleges that he grieved "the length of time getting a professional diagnosis, the continued prolonging of proper treatments," and appointment delays in seeing a neurologist. (*Id.* at 7.) Durham noted that he "put in many sick call requests & grievances," and spoke to "Major Moore, Lt. Fountain, Capt. Buford, Warden May, the Medical rep. for Commissioner Blanche Carney's office, and Corizon Medical staff" about his concerns. (*Id.*) Durham "finally got a returned appeal while [he] was under the care of the neuro-surgeon and Corizon Medical Associates at CFCF." (*Id.*) His "diagnosis that [he] was long overdue and in dire need [of] surgery (on 11-27-17) was the key factor and facts giving rise to and merit to the claims [he] levied against the City of Philadelphia and Corizon." (*Id.*)

Durham filed a Motion for Leave to Proceed *In Forma Pauperis* with his Complaint. In an Order entered on the docket May 23, 2018, the Court directed Durham that, if he sought to

---

[1] The Court adopts the pagination assigned to Durham's Complaint by the CM-ECF docketing system.

2

proceed *in forma papueris*, he would be required to file a certified copy of his prisoner account statement for the six-month period prior to lodging his Complaint, as the statement he submitted was missing the most recent month of account activity. (*See* ECF No. 5.) The Court also informed Durham that he had the option of proceeding by paying the $400 in fees to commence a civil action. (*See id.*) Durham paid the fees in response to the Court's Order.

In a Memorandum and Order entered on the docket June 25, 2018, the Court screened Durham's Complaint pursuant to 28 U.S.C. § 1915A and dismissed it for failure to state a claim. (ECF Nos. 6 & 7.) The Court first explained to Durham that the Philadelphia Prison System is not an entity that can be sued separately from the City. Accordingly, the Court dismissed Durham's claims against the Philadelphia Prison System and construed any claims against that entity as having been raised against the City itself.

Next, the Court explained that Durham had not stated a claim against the City or Corizon because he failed to explain how the delay in medical care was attributable to a policy or custom of those Defendants. Furthermore, if Durham was alleging that individuals at the jail violated his rights, he did not name those individuals as Defendants or specify with sufficient detail how they violated his rights. However, the Court gave Durham an opportunity to file an amended complaint.

As Durham failed to file an amended complaint in accordance with the time frame set forth in the Court's Order, the Court dismissed this case for failure to prosecute in an August 6, 2018 Order. (ECF No. 9.) Shortly thereafter, the Court received a Motion for Extension of Time from Durham, in which Durham asked for additional time and indicated that he retained counsel to represent him. (ECF No. 10.) Accordingly, the Court vacated its Order dismissing this case,

reopened the case, and provided Durham with additional time to file an amended complaint until September 10, 2018, whether *pro se* or through counsel. (ECF No. 11.)

On September 27, 2018, the Court received a letter from Durham in which he indicated that he sought to proceed with this lawsuit and which indicated he had an attorney. (ECF No. 12.) However, no attorney had entered an appearance for Durham on the docket. In an Order entered on the docket October 3, 2018, the Court gave Durham leave to file an amended complaint within thirty (30) days whether he did so *pro se* or through counsel. (ECF No. 13.) The Court also instructed the Clerk of Court to send another form complaint to Durham in the event he sought to use it to file an amended complaint. On November 5, 2018, the Court received Durham's Amended Complaint and his second Motion to Proceed *In Forma Pauperis.* 9ECF No. 14 & 15.)

Durham's Amended Complaint alleges that during the first week of February 2017, he "tripped while jumping down from the top bunk, the boat (extra bed) was in the way of the narrow path to the toilet . . . (There wasn't any ladder or way to get up and down other than jumping/climbing)." (Am. Compl. at 5 & 13.) Durham was injured as a result of his fall, and suffers from a "pinched spinal sack, pinched nerve in lower back affecting the sciatica nerve[,] a shifted lumbar and bulging disc." (*Id.*) Durham filed grievances regarding the "long wait to see [a] neurologist (6 months from fall + hospital visit)." (*Id.* at 7.) He is currently "on a walker and must use [his] wheelchair all day every day." (*Id.* at 13.)

Durham indicates that he is filing three groups of claims based on those allegations. First, he brings claims against the City and the Philadelphia Department of Prisons because they "put a boat (extra bed) in a designed 2 man cell and [did not allow] enough space to get up or down which causes [Durham's] permanent medical conditions, pain and suffering and [his]

disabilities." (*Id.* at 15.) Second, Durham brings claims against Corizon "for not getting [him] to a neurologist until 6-7 months after [his] tripping incident (deliberate indifference) or granting [him] a bottom [bunk]." (*Id.*) Third, Durham brings claims against the Philadelphia Department of Prisons "for housing and bedding [him] in a cell with 3 men, no way that[']s stable to get up or down from [his] top bunk even though he was over the age of 50 and housed with 2 guys that were much younger . . . this is also (deliberate indifference) no standard policy for older men." (*Id.*) Durham also appears to be alleging that he should not have been assigned to a top bunk bed because he was suffering from equilibrium issues.

Durham informed the Court that he is still looking for an attorney to represent him in this case and seeks a two-month extension to obtain counsel. As relief in this case, he seeks damages in excess of $1 million.

## II. STANDARD OF REVIEW

Although Durham has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

5

Relevant here, whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Probation & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations and generalized assertions are insufficient to state a claim. *Id.* As Durham is proceeding *pro se*, the Court is obligated to construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Durham has again failed to state a § 1983 claim against the Defendants.

### A. The Philadelphia Department of Prisons is not Subject to Suit Under § 1983

The Philadelphia Department of Prisons is not an entity that is subject to suit separate from the City of Philadelphia. *See* 53 Pa. Cons. Stat. Ann. § 16257. It is also not considered a "person" subject to suit under § 1983. *See Williams v. Phila. Dept of Prisons*, No. CV 18-2110, 2018 WL 2371099, at *1 (E.D. Pa. May 24, 2018). Accordingly, the Court will dismiss Durham's claims against the Philadelphia Department of Prisons because it is not a proper party to this lawsuit. Any claims against that entity will be construed as claims brought against the City of Philadelphia.

6

### B. Failure to Allege Policy or Custom

As previously explained to Durham, to state a claim against a municipality such as the City of Philadelphia, or an entity that contracts with a municipality such as Corizon, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

Here, Durham has not clearly tied any of the allegations in the Complaint to a policy or custom of the City or Corizon. The only allegation that alludes to a policy is Durham's suggestion that the City acted with deliberate indifference for housing him in cell with three men without a ladder or other means for him to ascend to or descend from the top bunk bed, especially since he is over fifty (50) years of age. (Compl. at 15.)

A pretrial detainee claiming a Fourteenth Amendment violation must establish that his conditions of confinement amount to punishment.[2] *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39; *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005). Negligence is not actionable under either constitutional provision. *See Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

---

[2] The Amended Complaint reflects that Durham was a pretrial detainee at the time of the events giving rise to his claims.

7

Courts faced with claims similar to those alleged by Durham have held that the absence of a ladder or other safety mechanism for the top bunk in a prison cell at most suggests negligence and does not give rise to a constitutional claim.[3] Accordingly, the City's failure to provide a ladder or other means for Durham to reach the top bunk bed does not establish a constitutional violation. The addition of an extra bed in the cell does not, without more, "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Of course, if Durham should not have been assigned to the top bunk because of serious medical needs, he may be able to establish a constitutional violation if he could identify an individual who was aware of that medical need but nevertheless subjected him to a serious risk,

---

[3] *See, e.g., Mikell v. Harry*, No. 1:16-CV-2254, 2018 WL 501000, at *5 (M.D. Pa. Jan. 22, 2018) ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference."); *Vercusky v. Purdue*, No. 3:15-CV-2461, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court similarly concludes that Plaintiffs allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation."); *Tutora v. Sweeney*, No. CIV.A. 14-4458, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, Civ. A. No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, Civ. A. No. 11-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, Civ. A. No. 09-233, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 F. App'x 217, 218-19 (3d Cir. 2010) (per curiam) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen).

or if he could describe a policy that prevented him from obtaining a required medical accommodation. However, the Amended Complaint, as pled, does not provide any such facts or identify any individual defendants who might have been involved in the events giving rise to Durham's injuries. Durham also has not tied any delay in medical care to a Corizon policy so as to state a basis for Corizon's liability, assuming any constitutional violation occurred in connection with the delay he experienced in seeing a neurologist.[4] Accordingly, Durham has again failed to state a claim against the City or Corizon due to his failure to clearly identify a policy or custom that led to the violation of his constitutional rights.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Durham's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(2). However, the Court will give Durham an opportunity to file a second amended complaint in accordance with the Court's Order accompanying this Memorandum, whether on his own or through counsel. Additionally, the Court will deny Durham's Motion for Leave to Proceed *In Forma Pauperis* at this time without

---

[4] The Court previously explained to Durham that, to state a § 1983 claim based on failures in medical treatment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam). "Where prison officials know of the prisoner's serious medical need, deliberate indifference will be found where the official '(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "[A] deliberate indifference claim premised on delayed medical treatment requires a plaintiff to demonstrate that 'the delay . . . was motivated by non-medical factors.'" *Miller v. Steele-Smith*, 713 F. App'x 74, 80 (3d Cir. 2017) (per curiam) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Accordingly, Durham must plausibly allege that any delay in medical care was due to deliberate indifference as opposed to incorrect or negligent treatment decisions.

9

prejudice to reassertion in the event he returns with a second amended complaint and seeks leave to proceed *in forma pauperis* with regard to appointment of counsel or service.

BY THE COURT:

/s/ Gerald A. McHugh

**GERALD A. MCHUGH, J.**